UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHAWNTELLE FISHER ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | No. 4:25-CV-01308 CDP |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on review of movant Shawntelle Fisher's filing in this case. [ECF No. 1]. Movant filed a "Motion for Relief Based on Ineffective Assistance of Counsel" in her closed criminal case on August 22, 2025. *United States v. Fisher*, No. 4:08-CR-391 CDP (E.D.Mo.); ECF No. 76. After review of the motion, the Clerk opened the instant civil matter under 28 U.S.C. § 2255. However, because it appears movant is no longer incarcerated, the Court interprets movant's action as one brought as a petition for writ of coram nobis. Movant's motion will be denied, and no certificate of appealability shall issue.

## **Background**

On November 25, 2008, Shawntelle Fisher entered a plea of guilty to one count of social security fraud in violation of Title 42, U.S.C. § 408(a)(7)(A).[1] On March 26, 2009, movant was sentenced to forty-six months' imprisonment in federal custody, in addition to three years of supervised release. *United States v. Fisher*, No. 4:08-CR-391 CDP (E.D.Mo.). Movant appealed her conviction and sentence to the Eighth Circuit Court of Appeals; however, the appeal was

---

[1] Count four of a five-count indictment. The government dismissed all other counts.

dismissed on April 30, 2009. *Fisher v. United States*, No. 09-1753 (8th Cir. 2009).[2]

### A. Claims in Movant's Motion

Movant was convicted of fraudulently obtaining an illegitimate social security number from the Social Security Administration and utilizing the fraudulent number to engage in financial transactions under an alias. As part of the judgment entered against her, she was ordered to do restitution in total amount of $66,721.76, of which $731.27 was paid prior to judgment, leaving a balance to be paid of $65,990.49. Despite the terms of the restitution's inclusion on the judgment entered on March 26, 2009, movant asserts in the instant motion that she was "not provided a copy of the restitution order, nor was [she] advised of the right to appeal the restitution order within the time prescribed by law under 18 U.S.C. § 3742 and Fed. R. App. 4(b)." [ECF No. 1 at 1]. Movant claims that this was a denial of her rights under the Sixth Amendment, and that therefore, her counsel's actions were ineffective. *Id*. Movant seeks to either modify the order of restitution or for the Court to grant her leave to file an out-of-time appeal as to the order of restitution. *Id.* at 2.

### B. Indictment

On June 26, 2008, movant Shawntelle Fisher was charged in a five-count indictment with social security card fraud and access device fraud. *United States v. Fisher*, No. 4:08-CR-391 CDP (E.D.Mo.); ECF No.1. Movant was assigned a highly experienced federal public defender to represent her.

---

[2]Movant's appeal centered around her disagreement with the length of her sentence and the District Court's failure to consider the time she spent previously incarcerated in the Missouri Department of Corrections on similar charges.

2

### C. Plea Agreement

Movant admitted in the Plea Agreement that she applied for and obtained false social security cards from the Social Security Administration using dates of birth other than her own, as well as utilizing false names. She also admitted that she opened credit accounts employing the false social security numbers with retail establishments and financial institutions within the Eastern District of Missouri, and using those fraudulently obtained funds, she purchased clothing, automobiles and other items. Movant further admitted that she also obtained unsecured loans, credit accounts, and automobile insurance by using those fraudulently obtained social security numbers.

The Plea Agreement includes the following language about the amount of restitution that the Court might order:

> The defendant further acknowledges that pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory in this case for all crimes listed in Section 3663A(c) committed after April 24, 1996. The defendant agrees that regardless of the particular counts of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment without regard to the count or counts to which the defendant has agreed to plead guilty.

### D. Plea Hearing

During the change of plea hearing on November 25, 2008, the government announced the evidence it would provide against movant at trial:

> Ms. Berry: Your Honor, if this matter had gone to trial the government would have shown that in 1983 the Social Security Administration issued a Social Security number ending in ----[3] for the defendant. She obtained replacement cards for that number in 1986, '90, '94, '96, '97, '98, and 2004. Using a date of birth other than her known, she then obtained a Social Security number ending in

---

[3]The Court has redacted the social security numbers from this Order.

---- in 1986 from the commissioner. She obtained replacement cards for the number ---- in '87, '90, '92, '94, '95, '96 and 2004. In '88 defendant applied for and obtained a Social Security number ending in ---- in the name of Shawntelle Torregrossa and a date of birth other than her own from the commissioner of the Social Security Administration. Replacement cards for the third number were obtained in 1988, '90, '96, and 2005.

Between May 28, 2005, and June 29th, 2005, she opened credit accounts in the name of Shawntelle Torregrossa using the fraudulently obtained Social Security number of ---- with retail establishments and financial institutions in the Eastern District of Missouri. Using the credit accounts, she purchased items including clothing and automobiles. She also obtained unsecured loans and automobile insurance using the number.

On June 29th, 2005, she applied for an automobile loan with First Community Credit Union in St. Louis County, Missouri, using one of the fraudulently acquired Social Security numbers. She obtained a loan in an amount exceeding $15,000 from the credit union using the name Shawntelle Torregrossa and the fraudulently acquired Social Security number. The institutions and retail establishments operate in interstate commerce.

The Court: Very Well. Is that what happened Ms. Fisher?

The Defendant: Yes.

Movant assured the Court she was pleading guilty of her own free will and that there had not been any threats or promises made to get her to plead guilty. Additionally, movant assured the Court that she was in fact guilty of the offense for which she had been charged. Movant then entered and the Court accepted her plea of guilty to count four of the indictment. *United States v. Fisher*, No. 4:08-CR-391 CDP (E.D.Mo.); ECF No. 62.

### E. Sentencing Hearing

At the sentencing hearing on March 26, 2009, the parties argued only over criminal history points and their effect on the offense level calculation. *United States v. Fisher*, No. 4:08-CR-391 CDP (E.D.Mo.); ECF No. 63. There was no argument relative to restitution. In fact, movant and her attorney indicated that they waived all objections to the presentence report,

4

which included specific information as to the total loss ($66,721.76) and the purported victims in the case. The report indicated that restitution could be ordered by the Court as a condition of supervision, and that it would be ordered "unless the Court finds that an order of restitution would unduly complicate and prolong" the sentencing process. During the sentencing hearing, the Court specifically enumerated the restitution amounts:

> . . .
> So after considering the Guidelines, the 3553(a) factors, the Court is going to sentence you to 46 months. Then I'm going to place you on three years supervised release.
>
> So within 72 hours of your release from the custody of the Bureau of Prisons you'll report in person to the probation office. While on supervision you'll comply with the standard conditions that have been adopted by this court. And also you'll refrain from the unlawful use of controlled substances and submit to periodic drug tests.
>
> You'll participate in a drug or alcohol abuse treatment program approved by the probation office. I'm going to recommend to the Bureau of Prisons that you be allowed to participate in the residential drug treatment program.
>
> You'll make restitution of this – all these various victims in the amount of $66,721,76, less the $800 that you'll be given credit for that Ms. Berry is going to go and get back from the Highway Patrol.
>
> Now these payments are due immediately to the Clerk of the Court for transfer to the victims. Assuming that you can't pay them immediately, then you'll make the payments under the following schedule: During incarceration you'll pay the criminal monetary penalties through the installment plan in accordance with the Bureau of Prisons Inmate Responsibility Program at a rate of 50 percent of the funds available to you. If you owe any money thereafter, then you'll make payments in monthly installments of at least $100 but no less than 10 percent of your gross earnings. So you'll work with the probation office. They will try to help you in terms of what you are going and try to help get you a job. But you have to change your ways.
>
> The Defendant: I already have, Your Honor.
>
> The Court: Well, that what everybody says that's standing there, but sometimes they come back to me.

The Defendant: I've stood in the courtroom on many occasions and I've never –

The Court: I'm talking about up here.

The Defendant: --and I've never ever said that.

The Court: I'm talking about coming back to see me. Forget all that. And those payments commence no later than 30 days after your release. Until those moneys are paid in full, you'll make the probation office and the United States Attorney's Office aware of any change in your economic circumstances as well as your mailing or residence address. You'll provide both those offices, probation and the U.S. Attorneys, with any financial information, give them access to that.

Fifth, you'll apply all moneys received from whatever source to this restitution.

Sixth, you'll be prohibited from incurring any new credit charges or opening additional lines of credit without prior approval of the probation office.

The Court finds that you do not have the ability to pay a fine, so that fine is waived. It is ordered, however, that you shall pay to the Untied States the special mandatory assessment of $100, which shall be due immediately.

Is there anything else Ms. Liggett?

Ms. Liggett: May I have a moment, please?

The Court: Yes.

(There was a conference held off the record.)

Ms. Liggett: Your Honor, at this time my client would like to object to the sentence of 46 months as being substantively unreasonable in the case as she didn't get credit for any of the time that she was locked up in the Missouri Department of Corrections.

The Court: The Court has taken that into consideration in terms of 11 months. The Court was going to sentence her – in fact, she got 13 months I guess. Because the Court was going to sentence you to that 57 months. That's what I took into consideration. And that's why I sentenced you to 46 months. So that's the consideration you got already from this Court.

In addition to reading out the restitution order at the sentencing hearing, the restitution

6

order was printed on the judgment. *United States v. Fisher*, No. 4:08-CR-391 CDP (E.D.Mo.); ECF No. 56.

## Discussion

### A. Coram Nobis

A writ of error coram nobis is a common law remedy to correct errors of fact that federal courts are authorized to issue under the All Writs Act, 28 U.S.C. § 1651(a). *See United States v. Morgan*, 346 U.S. 502, 506-07 (1954). It is "substantially equivalent" to a motion filed pursuant to 28 U.S.C. § 2255. *See United States v. Little*, 608 F.2d 296, 299 (8th Cir. 1979). Unlike a § 2255 motion, however, coram nobis relief is only "available when the defendant is no longer in custody for the applicable conviction, while custody is a prerequisite for habeas relief." *United States v. Camacho-Bordes*, 94 F.3d 1168, 1172 n.6 (8th Cir. 1996). Furthermore, "[a]s applied in criminal cases, coram nobis is a step in the criminal case and not, like habeas corpus[,] the beginning of a separate civil proceeding." *Baranski v. United States*, 880 F.3d 951, 954 (8th Cir. 2018).

The Supreme Court has cautioned that a writ of coram nobis is an "extraordinary remedy" that should be allowed "only under circumstances compelling such action to achieve justice" and to correct errors "of the most fundamental character." *Morgan*, 346 U.S. at 511–12. "Coram nobis relief has been called the criminal-law equivalent of the Hail Mary pass in American football." *Baranski*, 880 F.3d at 954 (citing *United States v. George*, 676 F.3d 249, 251 (1st Cir. 2012)). This is because "[t]he further a case progresses through the remedial steps available to a criminal defendant, the stiffer the requirements for vacating a final judgment.... The writ of error coram nobis lies at the far end of this continuum." *Id.* (quoting *George*, 676

7

F.3d at 258). Given that coram nobis relief is at the far end of the remedial spectrum and is subject to the stiffest requirements for vacating a judgment, the requirements for obtaining coram nobis relief cannot be less stringent than those required for § 2255 relief. *Id.* at 956.

**B. Timeliness of Motion**

Although a coram nobis petition is not technically subject to a statute of limitations, *Kovacs v. United States*, 744 F.3d 44, 54 (2d Cir. 2014), "[t]o qualify for coram nobis relief, [a] petitioner must have [a] valid reason for not attacking [the] conviction earlier." *United States v. Estrada-Perez*, No. 02-403(3) DSD, 2011 WL 2965249, at *2 (D. Minn. July 22, 2011) (quoting *United States v. Shoupe*, 299 F. App'x 610, 610-11 (8th Cir. 2008)); *see also Kovacs,* 744 F.3d at 54 ("[T]he petitioner must demonstrate sound reasons for any delay in seeking relief. The critical inquiry ... is whether the petitioner is able to show justifiable reasons for the delay.") (internal citation and quotation marks omitted).

Here, movant's judgment became final on July 29, 2009, ninety days after the Eighth Circuit affirmed this Court's judgment. Movant was released from custody on April 24, 2014, when she was discharged early from her supervised release. *United States v. Fisher*, No. 4:08-CR-391 CDP (E.D.Mo.); ECF No. 74. She failed to file a § 2255 motion alleging ineffective assistance of counsel (of any kind), and she did not file the instant motion until August 22, 2025, more than eleven years after she was released from custody. Movant does not provide any reason for why she waited eleven years to file a motion challenging her conviction in this Court.[4]

---

[4]A movant cannot challenge a restitution order on a motion to vacate brought pursuant to 28 U.S.C. § 2255 because it does not seek to challenge "custody." *United States v. Bernard*, 351 F.3d 360 (8th Cir.2003). Nor can a movant raise a claim that counsel was ineffective in failing to question the amount of the restitution order in a § 2255 motion. *Shephard v. United States*, 735 F.3d 797, 798 (8th Cir. 2013). However, the Court recognizes that there is a split of authority as to whether coram nobis relief is available to attack a restitution order or similarly, an ineffective assistance claim relative to the challenge

8

A § 2255 movant must seek relief within one year from when the judgment becomes final. 28 U.S.C. § 2255(f)(1). Although Congress has not imposed this procedural requirement on coram nobis petitioners seeking post-conviction relief, movant should not be permitted to pursue coram nobis relief with less diligence than that required by a § 2255 movant unless she has a valid reason for not attacking her conviction and judgment earlier. *See Baranski*, 880 F.3d at 956 (holding requirements for coram nobis relief cannot be less stringent than for § 2255 relief). Because movant has failed to show a justifiable reason for the delay, the instant action should be dismissed as untimely.

**C. Merits**

Even if the instant motion had been timely filed, it would fail on the merits, as movant's assertions of ineffective assistance of counsel relating to the restitution order fail to entitle movant to coram nobis relief.

To prevail on a claim of ineffective assistance of counsel, a movant must show (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

Movant's assertions regarding her counsel's performance as to the restitution order is

---

of a restitution order. *See Barnickel v. United States,* 113 F.3d 704 (7th Cir. 1997); *United States v. Singh,* No. 4:17-CR-193, 2020 WL 4192899, at *3 (E.D. Tex. July 20, 2020) ("the Fifth Circuit has held that 'a district court lacks jurisdiction to modify a restitution order under § 2255, a writ of coram nobis, or 'any other federal law' ") (quoting *Campbell v. United States*, 330 F. App'x 482, 483 (5th Cir. 2009)); *see also Carnesi v. United States,* 933 F. Supp. 2d 388, 393 (E.D.N.Y. 2013) ("the law in the Second Circuit is unclear as to whether a writ of error coram nobis may be available to challenge an order of restitution"); *Maguire v. United States,* No. CIV.A.05-12508-GAO, 2008 WL 3523175, at *1 n.1 (D. Mass. Aug. 12, 2008) ("Apparently some courts have suggested that they could be open to the proposition that the writ of coram nobis may be available to 'correct' restitution orders, *see, e.g., Barnickel*[,] ... but the First Circuit has not addressed that question.").

9

somewhat amorphous. She asserts that she was "not provided a copy of the restitution order, nor was [she] advised of the right to appeal the restitution order within the time prescribed by law under 18 U.S.C. § 3742 and Fed. R. App. 4(b)." [ECF No. 1 at 1]. However, as set forth above, movant agreed on November 25, 2008, to restitution in the Plea Agreement when she plead guilty to the crime of social security fraud, as well as when she was sentenced on March 26, 2009.

Movant agreed at sentencing that she had no objections to the presentence report, which listed the amounts of restitution and the persons to whom they were owed. Moreover, she listened to Judge Shaw at the sentencing hearing when he read the restitution amounts on the record, and she received a copy of the restitution order in the presentence investigation report and in the judgment.

Additionally, movant's claims that she was not given time to appeal the restitution order are belied by the record. As noted above, movant did, in fact, with the help of her counsel, appeal her conviction and sentence to the Eighth Circuit Court of Appeals. Although she filed an appeal of the judgment relative to the length of her sentence, she chose not to appeal the restitution order.[5]

Movant has not shown that her counsel's performance fell below an objective standard of reasonableness with respect to the restitution assessed against her. In fact, she signed the Plea Agreement, and it expressly states: "The defendant agrees to provide full restitution to all victims of all charges in the indictment without regard to the count or counts to which the defendant has

---

[5]Movant chose not to raise the matter of her disagreement with the restitution order on direct appeal, even though she chose to pursue other arguments. Movant may not use the extraordinary remedy of coram nobis as a substitute for raising the claim on appeal. *See Azzone v. United States,* 341 F.2d 417, 419 (8th Cir. 1965) ("Coram nobis may not be used as a substitute for an appeal.").

agreed to plead guilty." And at the sentencing hearing on March 26, 2009, counsel argued that movant's restitution should be decreased by $800, or the amount that was taken from her at the scene of her car accident by the police. Counsel also made this argument during the plea negotiations, as it is included in the Plea Agreement, thus, it constitutes a clear "exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Even if movant could show that her counsel's performance fell below an objective standard of reasonableness, movant would also have to show "there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial," *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), or, in this case, that she would have plead guilty to all five counts of the indictment without a plea agreement. But movant has not even argued that she would have sought to proceed to trial (or plead to all counts), if she had purportedly known of the full amount of restitution, or of the full ramifications of the restitution judgment. Rather, it is apparent that she is simply seeking to eliminate the restitution portion of her sentence.

The Seventh Circuit in *United States v. Sloan*, 505 F.3d 685, 697 (7th Cir.2007), rejected a coram nobis claim, like the claim movant appears to be making in this case, wherein movant believed he was somehow prejudiced because he did not want to pay restitution that he voluntarily agreed to pay. The Court in *Sloan* reasoned that his payment of restitution "[was] the very essence and heart of the negotiated plea agreement between the government and the defendant which he willingly and knowingly entered into." *Id.* at 697–98. Like the criminal defendant in *Sloan*, movant negotiated in her Plea Agreement to pay the total amount of restitution mandated by the Court. She cannot now complain about the bargain she made. The

11

writ of coram nobis must be denied.

## Conclusion

In addition to being procedurally barred, movant's coram nobis claim fails on the merits as she is unable to show that her counsel's representation fell below an objective standard of reasonableness and that there was a reasonable probability that, but for counsel's errors, she would not have had to pay restitution. Based on the foregoing, movant's motion for writ of coram nobis will be denied.

Accordingly,

**IT IS FURTHER ORDERED** that movant's "Motion for Relief Based on Ineffective Assistance of Counsel," which this Court interprets as a petition for writ of coram nobis [ECF No. 1], is **DENIED AND DISMISSED**. A separate Order of Dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue.

Dated this 17th day of September, 2025.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE